Good morning. May it please the Court. Jonathan Libby appearing on behalf of Appellant Kenneth Spangle. Your Honors, the District Court committed several errors in this case, including refusing to recuse itself, precluding the defendant from representing himself both at his revocation proceeding and at sentencing, and by imposing an unreasonable sentence. Mr. Libby, you did not move for recusal, and you did not object when the trial judge refused to recuse. By what standard do we now review that decision, or have you waived the challenge completely? Well, I certainly don't believe we've waived the challenge. The government brought it to the Court's attention. But it was not a motion by the government. It was, as I read the government's papers, a suggestion that the Court might wish to consider, but the government expressly disavowed that it was moving for recusal. Does that make a difference? I don't think it does. The issue was certainly before the Court. The Court, even if it – even if no motion had been presented, if no suggestion had been raised, the Court was still obligated on its own to consider whether or not he was unable to continue based on the objective standard. And the subjective standard. Isn't it a two-pronged inquiry? Well, there are two different parts of the statute. 455a is entirely an objective standard. That's whether or not a judge in any proceeding must recuse himself in any proceeding in which his impartiality might reasonably be questioned. That's entirely an objective standard. The district court did not address the objective standard at all. It jumped down to the subjective standard, which is under 455b, which is a different analysis. So the Court never addressed the objective standard here. And we would submit that, under the objective standard, recusal, in fact, was required. How would we review – let's stick with the subjective standard first, because it seems to me that's a little easier question. How would we review a judge's subjective determination under 455b that I do not feel sufficiently intimidated because there was no threat made to me, therefore, I'm not going to recuse under 455b because I don't think I'm biased against Mr. Spangl and I can proceed with the proceedings? Right. I certainly would concede it's difficult. So this is really a 455a challenge that you're bringing. Correct. I mean, we've raised both, but we're certainly concentrating more on the 455a. All right. So now we're concerned with whether or not a reasonably well-informed person would objectively perceive that there was unfairness here and that the Court could not be fair and impartial. Correct. Okay. And, of course, it's entirely fact-driven. What this Court has said, it may turn on the subtleties in a particular case. So you – the Court can't even look to other cases and compare it. It actually has to look at the facts presented in a particular case and make a judgment whether or not, objectively, a judge should have recused himself. And how do we review that? As I read our precedent, we have never answered the question, what is the standard of review? Is it an abuse of discretion? Is it a completely de novo review? The judge made some findings of fact. Do we – is it a mixed question of law and fact to which we accord clear error to the factual findings? Well, courts have certainly said that under the objective standard, under 455a, the Court is required to recuse himself if his impartiality might reasonably question. So there's no discretion there. It's requirements. So I would submit abuse of discretion would not apply under those circumstances. And, in fact, the Court has to review this de novo and can certainly consider the facts and the facts that the judge finds. You can certainly review a clear error. Kennedy. Would you have us accept as a rule that any implied threat by a criminal defendant as to the sentencing judge would require recusal? No. And certainly there's no – What else is there here? Well, what we have here are certainly a number of statements that the district court made, which we submit suggests that there was a little bit more here. What the Court had said was Mr. Spangl was dangerous. He said that he was dangerous. Dangerous. Okay. Mentally deranged. The – at one point the Court indicated that he was secretly getting information – intimate information on potential targets. Again, people might be – legitimately be targets who are on this list. The government, of course, argued in its – in its sentencing papers that the maximum sentence was necessary in order to protect the identified parties on the lists. And of course – Well, we do have a factual finding by the district court that because of the proximity, although I recognize it was 45 to 50 miles from Long Beach, based on all of the other facts of Mr. Spangl's actions, that it was plausible to conclude that he was en route to the vicinity of the victim that he had previously threatened. He didn't know whether or not he was just going to intimidate her by being seen in the vicinity or whether he had other ill intention in mind. But with – with that as a fact, how does that factor into the equation? That's the only person that he's actually made a direct threat to. Well, with respect, Your Honor, what we had is a paper with the probation officer's name on it and a paper with Judge Kaczynski's name on it and information about him and his family. But what I was – And Judge Kaczynski also, of course, is in the same area where Mr. Spangl went. But what – I guess what I was suggesting is the only person that he's ever made an actually served time in prison after his conviction. Well, that's certainly – So that would support, would it not, a finding by the district court that – that Mr. Spangl poses a danger at least as to the former probation officer. Well, certainly, and that was the finding he made. But it's our position that that threat also extended to Judge Kaczynski and his family. I understand that. I understand that. And I also wanted to question you about the mentally deranged comment. I read the reports of the psychologists and so on. Mr. Spangl's been evaluated by a lot of different mental health professionals, and there certainly are statements within those reports that would support a conclusion that he is at least mentally unbalanced. Deranged may be a fairly strong term, but where you have suggestions of antisocial personality and I guess there's a dispute as to whether he's a schizophrenic or paranoid or no one can quite figure out what the Axis I diagnosis is, why doesn't that support the district court's comments that he's dealing with a dangerous, potentially deranged individual who is a real threat here? Well, it certainly does with – and it's our position that is why the court was obligated to recuse itself. But the question is, who is he a threat to? And that's where I'm having a hard time. What you want us to conclude is that because he threatened the probation officer directly, that he must have also intended Subsilencio to be threatening the district court. And why wouldn't that be a problem in virtually any case in which you have a person who behaves like Mr. Spangl and makes threats against people and lists and that sort of thing? Well, Mr. Spangl included the judge on these lists, which the court found were lists of potential targets. Well, the list was long and distinguished, as I read it. I mean, just about anybody who's ever had any contact with Mr. Spangl ends up on one of his lists. That's certainly true. But these were lists that were separate and apart from his prosecution. Understand, he was out of custody at this time. So this was completely unrelated. It was not part of the criminal prosecution in any way. And he made this list, which the court itself identified as targets. Some of the lists were found from a search of his prison cell, were they not, by the FBI agent? No. What the court relied upon were these lists that were in his car. But there were other lists is what I'm told. As Judge Kaczynski said, Mr. Spangl makes lists. That's part of the demo. That's certainly true. He has had lists. And the fact that his probation officer were on those lists with anybody else, I mean, it cuts both ways, obviously. Yeah. You know, he makes lists, but these lists were found by the court to be lists of targets. Of course, the court found in his prosecution, it imposed a substantial enhancement based on finding that he could, in fact, carry out these threats. So this is a man that the court found was dangerous. Now, the court may not have even realized that it was biased in any way, but the fact is, when you have your name on a list, which you believe to be a list of targets, and it includes your wife, it includes your children, even though you can add to that, that's not exactly what the district court said. He acknowledged that his name and those of his family members were on the list, but he also noted, as we all know, that this information is readily available on the Internet, much to the chagrin of many of us. Certainly, which is also how Mr. Spankle got the probation officer's information. Right. You know, and if he was a threat to the probation officer, then, based on this record, he was also a threat to Judge Kozinski. What do we do with the district court's finding, which I think our case law in Holland recognized that the potential for manipulation, if you will, forced recusals by individuals who deliberately make threats toward their supervising trial judge in order to try and force a recusal. And I think our case law says if, in that case, it may not be appropriate for the district court to step aside. And if this were in the midst of a prosecution or in the midst of a revocation proceeding pending? It was pending sentencing, right? No, no, no. This was while he – after he had been released from custody, he was on supervised release. Right. Okay. Right. So he was free. While he was – while he was free and – While he was free to do what he chose, obviously, under the supervision of his probation officer. And it's at that point that he then traveled from Northern California toward Judge Kozinski and the probation officer with this list with names and addresses. I mean, when I went back and looked, you know, most of them – most of the list just included names. With respect to Judge Kozinski, it also had an address. So that's an additional factor, which I think suggests that it is very similar to what he found with respect to the probation officer. He also had lists, though, did he not? I read something about government office buildings, all government office buildings in California. Certainly. And there's no question he had lists. So he had addresses for others who – other officials, including the assistant – at least one assistant United States attorney. Certainly some. And he would have had her office building address as well. Absolutely. And as the Court found, these were all potential threats. You know, and the Court, in fact, expressly said, if I were Ms. Allard, the probation officer, and learned of this, the fact that my name was on a list and he had traveled down and there was gun information in the car, I would be scared witless. I mean, that's what the Court said. And then at a later hearing, the Court said, well, I don't need to recuse myself because I'm not scared. I mean, you can't have it both ways. It lets you run over a person. There's one additional subject I'd like you to address briefly, and that has to do with the alleged harm resulting from the failure of Mr. Spangl to be allowed to represent himself. Because as I read what happened, it seemed like the more talking he did, the deeper the hole he dug. And I'm trying to figure out what it was he could have said that might have changed the result. Well, it's not clear what he could have said. Well, I think that's important, because I look at our precedent. This isn't treated as a structural error at this stage. I understand in other contexts usually counsel-type objections are, but that doesn't seem to be the case here, so I'm trying to figure out what possible prejudice could there have been from the denial of that request. The request was made both with respect to the hearing on the revocation and with respect to sentencing. With respect to sentencing, harmless error applies. With respect to the revocation proceeding itself, it's structural error. But he'd already admitted the violation. Well, he had certainly made comments that suggested that he was admitting or planning to admit. Was there any possible doubt with regard to whether or not – in fact, as to some elements he did, he did not contest. As to others, I guess it could be in an academic sense, but is there any possibility that a judge would say, no, you didn't violate the conditions? I mean, he plainly had. Well, sure. I don't disagree with that. But structural error would apply with respect to the revocation proceeding itself. And it's our position that, in fact, he had made that timely request. There was a hearing that was scheduled specifically for that purpose in which he said he wanted to represent himself. It was days before the actual revocation proceeding was to be held. He certainly appeared to be competent. I mean, numerous mental health professionals had found him certainly to be competent. When I read the transcripts, you know, I wasn't in the courtroom, so I don't know how it came across with outbursts and stuff. But on the plain paper, he seemed very intelligent, seemed to know what he was talking about, and seemed like he could, in fact, have represented himself if he had been given that opportunity. And I know that I'm well over time. All right. Thank you, Mr. O'Leary. We'll hear from Mr. Levin. Good morning, and pleased to court. Dana Levin on behalf of the government. Let me just begin by just addressing the last point that came up on the self-representation. Just to clarify, the defendant did admit the revocation at the arraignment on the 20th of February, and it's on page 192 of the excerpts. They say, do you admit the allegation? Is it true and correct? The defendant answers, yes. So the evidentiary hearing in April and the final sentencing hearing in September were for purposes of sentencing, so any error is subject to harmlessness review. It's not structural under Manis. In the error here, and we have arguments in our brief for why there was no error, but the error here, even if there was an error, was clearly harmless. There's just nothing that the defendant points to that the defendant might have said that would have changed the result here. And, in fact, at least with respect to the sentencing hearing, the final sentencing hearing in September, the defendant effectively did represent himself. He does all the talking. He talks, I think, for 12 pages of transcript pretty much nonstop. Eventually the Court does say five more minutes, one more minute, and then puts an end to it, but that's perfectly reasonable. Counsel doesn't have a right to talk forever at a hearing. And by the time the Court does cut him off, the defendant has moved really into irrelevancies. He's talking about a misconduct proceeding against the Court. He's talking about being exiled to Canada. He's not talking about the case really anymore, not in a meaningful way. So I think any error to the extent there was one with respect to self-representation is clearly harmless here under Manus. Going back to the recusal question, first the standard of review. We said in our brief it's abuse of discretion. I think, in fact, Judge Tallman is probably correct. It should be plain error here because the defense didn't ask for it, didn't object. In either event, I think here it boils down to the district court made findings that go to the objective standard. I think he made really three of them. First, he says there wasn't a threat involved. That's a fact finding. That's subject to clear error. There wasn't a threat involved against Judge Kaczynski. He also said that one of the realities of life is that there's information on the Internet. And he also said, I think whoever were to get this case would end up on one of Mr. Spangel's lists. I expect to be there soon. I think those together, those all go to the objective standard. That's what the Court in Holland was talking about. The Court in Holland says even a threat, even a direct threat doesn't objectively rise to the level of requiring recusal. In here, there was no direct threat against Judge Kaczynski. I think he did make sufficient findings, sufficient observations to justify his finding under the objective side of 455. And clearly, he says directly he doesn't subjectively feel threatened. That's not illogical or implausible, you know, the type of conclusion I think this Court would need to reach either in order to overturn a subjective determination. So I think there's no issue with the recusal. If the Court doesn't have additional questions, I have nothing further. Mr. Libby, I'll give you another minute if you want one final word here. Thank you, Your Honor. Just very briefly, it may be true that he admitted the allegation at the preliminary hearing, but it's very common that individuals indicate that they may be pleading guilty at a preliminary hearing and then change their mind. And so no final determination had been made that he, in fact, was pleading guilty to the allegation at that time. But to go back to Judge Clifton's question, at no point during the proceedings did he actually change his mind. So if it is not structural error, then where is the harm here? Well, I would concede it's difficult to show that, but we would submit that it would be structural error, at least with respect to the revocation proceeding itself. Okay. All right. And with that, I'm saying that even after arraignment where he admits the fact he could have changed his mind, and if he could have changed his mind, he could have represented himself, and if he could have represented himself, that's structural error. Well, when he goes to ref – if, in fact, he had been able to represent himself at the revocation proceeding, who knows what could have come up as he – in the course of his representation that could have caused him to change his mind. So we don't know what might have occurred had, in fact, he been able to represent himself. Thank you both very much. The case just argued is submitted. I appreciate your coming up to San Francisco to argue it, and we'll get you a decision as soon as we can. Now, he's about ready to be released. Help me with the timing. He is scheduled to be released February 17th. Okay. All right. Thank you very much. We'll definitely get you an answer before then. Thank you very much.
judges: Tallman, Clifton, Bea